## UNITES STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

In re:

| | |
|---|---|
| **Adele M. Polk** | **Ch 13** |
| **Debtor** | **19-12514-KHK** |

## MOTION REQUESTING STAY PENDING APPEAL

Comes now the debtor, by counsel, and request that the court enter an

order staying the dismissal of the case pending appeal to the district court.

**FACTS OF THE CASE:**

The debtor filed the instant chapter 13 case on July 31, 2019 in order to

prevent a foreclosure on her home. Since she had received a prior chapter 7

discharge the instant filing was a "chapter 20" bankruptcy filing. The debtor

reported in her bankruptcy schedules that she had income of $4,057 per month on

account of her pension and Social Security benefits. At the time of filing the instant

petition her mortgage payments were a bit less than $1,500 per month and her

mortgage arrearage was roughly $22,000.  The debtor proposed a plan that would

pay $610 per moth for five years in order to catch up on her mortgage arrearage,

and in addition pay off the roughly $10,000 that she still owed on her vehicle. The

plan was confirmed on December 20, 2019.

On August 21, 2020 the mortgage company filed a Motion for Relief from

the Automatic Stay in which they alleged that the debtor has not made a single

mortgage payment since the case was filed, and that the total post-petition arrearage was now roughly $19,000. After some back and forth the debtor and counsel for the mortgage company agreed that the motion could be resolved with a consent order in which the debtor agreed to immediately resume her mortgage payments and that the additional $19,000 or so in mortgage arrearage will be "put into an amended plan." The chapter 13 trustee ("the trustee) also begrudgingly agreed to go along with the Consent Order (while reserving the right to object to any future plan proposed) and on September 3, 2020 the Bankruptcy Court ("the court") endorsed the Consent Order presented to it by the parties.

The Consent Order signed by the court stated that the debtor will resume making her mortgage payments on September 1, 2020, and that the debtor shall file within 14 days of the entry of the order an amended plan which will cure the post-petition payment default of roughly $20,000.

On October 2, 2020, the trustee, seizing on the fact that the debtor had not complied with the earlier court order on September 3, 2020 requiring that an amended plan be filed within 14 days, filed a motion to dismiss pursuant to 11 U.S.C. 1307 (c)(8) noting that the debtor had not complied with the prior court order by filing a timely amended plan. On October 8, 2020, the debtor filed an amended pan which accounted for the additional $20,000 or so in mortgage arrearage and proposed to raise her chapter 13 payments from $610 per month to

$1100 per month for the next 46 months in order to pay off her mortgage arrearage and her car loan. On October 21, 2020, the trustee filed an objection to confirmation to the debtor's plan arguing feasibility under 11 U.S.C 1325 (a)(3) and expressing his skepticism over debtor's ability to make her payments. The matter was then set for hearing on November 12, 2020.

On November 12, 2020, the day of the confirmation hearing, the trustee was the first to present his opening statement. Right at the outset the trustee states (page 2 of the court transcript) "Your honor, this comes on my motion to dismiss and plan objection. They're basically the same. The issue before the Court, I think, is: is this case too far gone to be salvageable or not? This is followed by brief remarks by debtor's counsel and thereafter the court interjects and states the following:

"This budget is too thin. This debtor is not going to make it. And everybody who is in this room now would agree if you just look at the facts. This is not personal; its just about money. She cannot afford this house and this car with this income. It's simple." The court continues from there: "Now, if the daughter can work, you've got a shot because you have –you would have to amend the plan. But I see no bright future for this case, under any circumstance, without an infusion of cash from some source that is not present at this point."

At this point, at the conclusion of the trustee's opening and 30 seconds into the debtor's opening, since it appeared that the court had already made up its mind,

the trustee decided to intervene on behalf of the debtor. The trustee suggested that

perhaps his motion to dismiss be continued to a January date to give the debtor

some time to explore…."Because the debtor's in apparent good faith, I'm not

dying to have the case dismissed right here right now" the trustee stated. At that

point the court responded by simply asking counsel for debtor if he wished to

present some testimony. Counsel for debtor then conducted the direct examination

of the debtor. The following exchange then ensued:

Q. What sources of income do you currently have?

A. I have Social Security, a pension, and some savings, and that's it.

Q. Okay. When you say "savings," what savings are we talking?

A. When I didn't get any sort of information about what mortgage payment

and who to make it to, I never spent the money that I was going to pay for those

mortgage payments, so they're sitting in my savings account.

Q. Okay. So in other words, since filing the bankruptcy case, there was

about a year period of time in which you did not make payments on the mortgage,

and you were able to save most of that money?

A. Yes, I was.

THE COURT: How much?

A. There's about 15,000 of saved mortgage payments in my savings

account.

Q. Okay, So right now, as you sit here today, you're telling the Court you have about 15,000 dollars in your savings account?

A. Yes.

Q. Since we filed the amended plan, most recent plan, were you in fact able to make an increased payment of 1,100 dollars to the Chapter 13 Trustee?

A. Yes, I have.

Q. Okay. So in the month of October, you made a payment of 1,100 dollars, correct?

A. 1,100, yes.

Q. Okay, have you made a payment in November yet?

A. No, I haven't. I was waiting to see the outcome of today's hearing.

Q. Understood. Your mortgage payment – in the last two months, have you resume making your mortgage payments?

A. Yes, as of August. As of August.

Q. Okay. So you made your mortgage payment August, September, October.

A. August through October – November, I'm sorry. Four months.

Q. Okay. All right. And as far as the constraints on your budget, are you willing and able to tighten your belt in order to make these plan payments of 1,100 dollars a month work?

A. Yes, I am.

Following the testimony given by the debtor, the trustee then examined the debtor's daughter who was also present for the hearing. At the conclusion of the testimony of debtor's daughter, and prior to closing statement by either party, the court announced that it was ready to issue its ruling. The court acknowledged in its oral ruling that "This is the really hard case" and stated that it was time to "….give them some closure by dismissing the case." The court's focus was on the debtor's budget. "The budget is too thin for two humans to begin with. When I see 400 dollars, that two people are eating on 400 dollars, I know that that's a robbing Peter to pay Paul budget. And it's never ever –it never goes in a good direction. So, I am going to dismiss this case so that these debtors can reorganize without this debt."

On November 19, 2020 the court entered the Order of Dismissal. On or about December 1, 2020 the debtor's car was repossessed by Santander. Debtor would have to make other arrangements to get to dialysis. On November 23, 2020 debtor notes is appeal to the district court. Eight months later, the Rocket Docket appears to have run out of fuel. To date the District Court has yet to issue a ruling. On May 13, 2021 the debtor is forced to file another chapter 13 case in order to stop a foreclosure on her home. On June 10, 2021, following a motion to dismiss by the trustee, a hearing is conducted, and the court opines that the case ought to be dismissed. In anticipation of another foreclosure on the horizon, the debtor files the instant motion.

**Standard for a Stay Pending Appeal:**

Rule 8007(a) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") requires parties moving for "a stay of a judgment, order, or

decree of the bankruptcy court pending appeal" to move first for such relief in the

bankruptcy court. Fed. R. Bankr. P. 8007(a)(1)(A). "'A stay is not a matter of right,

even if irreparable injury might otherwise result.' It is instead 'an exercise of

judicial discretion,' and '[t]he propriety of its issue is dependent upon the

circumstances of the particular case.'" Nken v. Holder, 556 U.S. 418, 433 (2009)

(quoting Virginian Ry. Co. v. United States, 272 U.S. 658, 672-73 (1926)). To

prevail on such a motion for stay pending appeal, the United States Court of

Appeals for the Fourth Circuit has established the following four-part test.

[A] party seeking a stay must show (1) that he will likely prevail on the

merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied,

(3) that other parties will not be substantially harmed by the stay, and (4) that the

public interest will be served by granting the stay. Long v. Robinson, 432 F.2d 977,

979 (4th Cir. 1970). "All four requirements must be satisfied." BDC Cap., Inc. v.

Thoburn Ltd. P'ship, 508 B.R. 633, 637 (E.D. Va. 2014). "The party requesting a

stay bears the burden of showing that the circumstances justify an exercise of

that discretion." Nken, 556 U.S. at 433-34.

 In reviewing these four factors, "[t]he first two factors . . . are the most

critical." Id. at 434. " *In re Retail Grp. (Bankr. E.D. Va. 2021)*


### A) <u>Debtor will likely prevail on the merits of the appeal</u>

Involuntary dismissal of a Chapter 13 case is governed by 11 U.S.C. § 1307(c),

which provides that, on the motion of a trustee or another party, "and after notice

and a hearing," a case may be converted to a case under Chapter 7 or dismissed

"for cause," depending on what is in the best interests of creditors and the estate,

based on a variety of reasons, including the following, 11 U.S.C. § 1307(c)(1)-

(11):

> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (2) nonpayment of any fees and charges required under chapter 123 of title
> 28;
>
> (3) failure to file a plan timely under section 1321 of this title;
>
> (4) failure to commence making timely payments under section 1326 of this
> title;

(5) denial of confirmation of a plan under section 1325 of this title <u>and</u>

denial of a request made for additional time for filing another plan or a

modification of a plan;

(6) material default by the debtor with respect to a term of a confirmed

plan;

(7) revocation of the order of confirmation under section 1330 of this title,

and denial of confirmation of a modified plan under section 1329 of this

title;

(8) termination of a confirmed plan by reason of the occurrence of a

condition specified in the plan other than completion of payments under the

plan;

(9) only on request of the United States trustee, failure of the debtor to file,

within fifteen days, or such additional time as the court may allow, after the

filing of the petition commencing such case, the information required by

paragraph (1) of section 521(a);

(10) only on request of the United States trustee, failure to timely file the

information required by paragraph (2) of section 521(a); or

(11) failure of the debtor to pay any domestic support obligation that first

becomes payable after the date of the filing of the petition."

The grounds enumerated in subsections 1307(c)(1) through (11) are not
exhaustive." 8-1307 Collier on Bankruptcy ¶ 1307.04. Reasons constituting cause
for dismissal also include "judicially construed ones such as bad faith[.]" Kestell v.
Kestell (In re Kestell), 99 F.3d 146, 148 (4th Cir. 1996). A "bankruptcy court is
accorded considerable discretion in evaluating whether 'cause' exists and whether
dismissal is the appropriate remedy.[]" In re Orawsky, 387 B.R. 128, 137 (Bankr.
E.D. Pa. 2008). *Dailey v. Thomas (D. Md. 2017)*

Under United States Jurisprudence "trial by ambush" is not permitted. As
such, a cause of action(s) plead by a plaintiff in a complaint limits what that party
can argue at trial. If one asserts breach of contract in his complaint, then one
cannot suddenly, "out of the blue", try to argue fraud at trial. Better stated: At a
bare minimum ... a defendant must be afforded both adequate notice of any claims
asserted against him and a meaningful opportunity to mount a defense." Doral
Mortg., 57 F.3d at 1172. Lack of prejudice, however, does not "compel a
determination that the amendment is appropriate." Kenda Corp., 329 F.3d at 232
(quoting United States v. Davis, 261 F.3d 1, 59 (1st Cir. 2001) ). *Fustolo v. Patriot
Grp. LLC (In re Fustolo), 896 F.3d 76 (1st Cir. 2018).* Under the Civil Rules,
notice of a claim is a defendant's entitlement, not a defendant's burden. Doral
Mortg., 57 F.3d at 1172. When evidence presented is relevant to a claim actually
pleaded, and not solely to a new issue, the non-moving party is not provided

adequate notice that the new claim is being litigated. See DCPB, 957 F.2d at 917.

Simply put, one cannot give implied consent to litigate a claim for which he or she

is not provided notice.

The trustee's basis for filing his motion to dismiss was that a modified plan

was not timely filed after the mortgage company filed for relief and a consent order

was entered, and as such dismissal was appropriate under 1307©(8). The trustee's

basis for objecting to confirmation was feasibility. Right at the outset of the

confirmation hearing however the basis for the objection to confirmation morphed

into the basis to dismiss the case. The trustee's motion to dismiss did not "charge"

the debtor with a dismissal under 1307(c)(5) which is in fact the reason that the

court dismissed the case (i.e the plan is not feasible, and giving the debtor time to

file amended plan is futile since no amended plan can resolve the issue at hand).

The court transcript makes it clear that the court found the debtor's plan to be

"infeasible" and the debtor's financial situation to be "hopeless."

Meanwhile, the Order for dismissal is flawed in two respects. First, the

reference to 11U.S.C 1307(c) appears in the dismissal order "out of left field." The

debtor was not prosecuted for "bad faith" and the case was not dismissed for "bad

faith." Moreover, the motion to dismiss makes no mention of seeking dismissal for

"bad faith." Second, throughout the confirmation hearing and during the court's

deliberation there was nothing to suggest that the debtor's case is being dismissed

for her failure to file a modified plan in a timely fashion thus resulting in dismissal

under (c)(8). It was all about feasibility and implicitly 1307(c)(5). The court

concluded that the debtor's situation was hopeless as far as chapter 13 goes.

As such, the debtor was not afforded adequate notice to prepare to mount a

defense under 11 U.S.C 1307(c)(5) and a meaningful opportunity to defend herself

under this theory of dismissal. Simply put, the actual cause for the dismissal of

debtor's case is not the cause that was pled by the trustee. And the Order of

Dismissal does not match "the facts on the ground." As such, the court committed

reversible error when dismissing the case.

## 2. Even if properly plead, the evidence presented did not support the bankruptcy court's finding to dismiss the case under 1307(c)(5).

Assuming that the district court were to conclude that the foregoing is just

"splitting hairs" on the part of the debtor, the court will more than likely reverse in

light of the fact that the debtor's plan was feasible, and that the debtor was not at

all "at the end of the line."

It is worth emphasizing that while the bankruptcy court did not specify that

it was dismissing the case under 1307(c)(5), and while the Order of Dismissal does

not indicate that the debtor is being dismissed under 1307(c)(5), it is clear from the

record that the basis that led the court to dismiss this case was because the court

concluded  that the debtor's plan was clearly not feasible and thus could not be

confirmed. And given debtor's income she simply could not put forth a

confirmable plan. That is precisely the situation when a court will dismiss under

1307(c)(5).

But, before the court can conclude that the situation if hopeless and that

allowing the debtor to present another plan is futile, the court must first correctly

conclude that the plan cannot be confirmed. In this case the court concluded that

the plan could not be confirmed because the plan before it was not feasible. The

standard for feasibility in turn is based on a "reasonable likelihood of success."

A Colorado bankruptcy addressed feasibility in *In re Ford, 345 B.R. 713*

*(Bankr. Colo. 2006)* and stated "This Court believes that the "most important

criterion" for the confirmation of a Chapter 13 plan is § 1325(a)(6)'s requirement

that the Court determine whether the Debtor will be able to make all payments

under the plan and comply with all other provisions under the plan."

From there the court analyzed the evidence before it and noted that "Debtor

testified that she has reduced her expenses through significant belt tightening.

Specifically, Debtor testified that she has found "new minimums" in her monthly

expenses and no longer uses credit cards for consumer purchases. Debtor has put

off major expenses, including dental work, purchase of eye glasses, home

maintenance, and car maintenance while she seeks a higher paying job. She plans

to devote a portion of her future income to these deferred expenses if she does in

fact find a higher paying job. Debtor reduced her utility bills to $75 on electric, $9

on water, and $50 on telephone, effectively cutting her utility bills in half.

Debtor has reduced her food budget to $250 per month. Debtor testified she has

supplemented her food with donations from a Food Bank and with extra or

unsaleable food from her part-time job with Dominos Pizza. Debtor also testified

that she provides housing and some food for her 19-year-old son, who is also

unemployed."

Nor was the court deterred that the debtor's income was predominately

based on unemployment benefits.  "Debtor's Amended Schedule I reports an

income of $2,224.00 per month. This consists of a salary of $400 per month as a

part time driver for Dominos Pizza and $1,824.00 per month in unemployment

benefits. Though unemployment benefits are a significant portion of Debtor's

income, it is widely recognized that unemployment benefits are an acceptable basis

for feasibility of a Chapter 13 plan. See In re Hickman, 104 B.R. 374, 377 (Bankr.

D.Colo.) (Brooks, J.); In re Compton, 88 B.R. 166, 167 (Bankr.S.D.Ohio 1988); In

re Overstreet, 23 B.R. 712, 713-14 (Bankr. W.D.La.1982)."

"This leaves a surplus of $260.00 per month. Debtor testified that she

intends to contribute all of the surplus to her Chapter 13 Plan. Though Debtor's

proposed Plan assumes a tight budget, the Court finds the Debtor to be credible in

her desire to pay creditors. The Court finds that the Debtor is attempting to live

within her budget, has accurately reported the actual use of her funds, is current

with her payments to the Trustee, and presented credible testimony that she is

committed to paying her creditors through her Chapter 13 Plan. Considering all of

the circumstances, the Court holds that the Debtor has met her burden and that

Debtor's Chapter 13 Plan is feasible."

The court's concluding remarks on the issue of feasibility note: "The budget

in Debtor's Chapter 13 Plan is tight, but feasible. Despite her tight budget, Debtor

is current with her payments to the Trustee. At the hearing, the Debtor gave

credible testimony that she intends to pay her creditors and overcome her gambling

problem. In light of these facts, the Court believes the Debtor should be given the

benefit of the doubt and have her chance to reorganize under a Chapter 13 plan. If

she fails in her Plan, creditors will have a chance to seek conversion to a Chapter 7

case."

The same can be said of the present debtor. The budget in her chapter 13

plan is tight, but feasible. In addition, she does not have a gambling problem and

rather than having "questionable income" such as unemployment benefits, she has

two pensions for life at her disposal.

Nor is the feasibility bar supposed to be rigorous.  *In re Drago (Bankr. N.J.*

*2015)***:** "While the feasibility requirement is not rigorous, the plan proponent must,

at minimum, demonstrate that the Debtor's income exceeds expenses by an amount

sufficient to make the payments proposed by the plan." In re Bernardes, 267 B.R.

690, 695 (Bankr. D.N.J. 2001) (citations omitted). The Debtor does not need to

prove that the Plan is guaranteed to be successful. See In re Mycek, 2013 WL

9994332, at *4 (C.D. Cal. Oct. 22, 2013); In re Anderson, 18 B.R. 763, 765

(Bankr. S.D. Ohio) aff'd, 28 B.R. 628 (S.D. Ohio 1982). Rather, the

Court must make a factual determination as to whether the plan has a "reasonable

likelihood of success." In re Buccolo, 397 B.R. at 530. "Generally, visionary or

speculative Chapter 13 plans will not meet the feasibility standard." In re Eckert,

485 B.R. 77, 85 (Bankr. M.D. Pa. 2013). "

Back to the case at hand, while the debtor could not have guaranteed to the

court that her plan would work, having $15,000.00 in the bank as "safety net"

(debtor testified to having this sum of money in her bank account at the

confirmation hearing) goes a long way towards demonstrating that her chances of

success are quite high. In fact, few debtors can present such a level of liquidity as a

back-up in a chapter 13 case.

As for the issue that the debtor's plan was defective because her expenses

were unrealistic, this is how the bankruptcy court in *In re Stuteville (Bankr. N.M.

2020)* addressed this issue:

"Under § 1325(a)(6), ………….[W]here a debtor cannot make the

payments proposed under a [c]hapter 13 plan because his or her net disposable

income is insufficient or the expenses unrealistic, the plan is not feasible and cannot be confirmed."

"This assessment requires a determination that the debtor's income is regular and stable.37 In addition, the bankruptcy court should determine whether the debtor will have sufficient income to make required plan payments to the chapter 13 trustee while at the same time paying expenses reasonably necessary to support the debtor and the debtor's dependents.38 Other considerations are whether the debtor is current in plan payments or incurred post-petition debt to cover living expenses.39 "[T]he proponent of a [c]hapter 13 plan has the burden of proof to show that the § 1325(a) tests have been met."

With these parameters in place, the bankruptcy court in In re Stuteville concluded that: "Nevertheless, the Court has found that Mr. Stuteville, who has been making the Plan payments without assistance for 15 months, can manage his expenses in such a manner so as to afford both his Plan payment and his and Child's monthly expenses.41 While Mr. Stuteville's monthly budget is unquestionably tight, "[d]ebtors who cannot pay their unsecured creditors in full are expected to undergo a moderate amount of belt-tightening in order to ensure the integrity of a [c]hapter 13 plan."

Similarly, the debtor in this case undoubtedly has a tight budget, but she should be commended for her willingness to "tighten her belt" in order to save her home and motor vehicle.

Finally, the court in *In re Stuteville* also addressed another issue that addressed briefly by this court at debtor's confirmation hearing, which is the "emergency money dilemma." The court said: "Ms. Holcomb also argues that the Plan is not feasible because Mr. Stuteville's net monthly income after the Plan payment is not enough to create a cushion for unexpected costs related to Child, such as dental care, eyeglasses, or medical care, or for litigation costs associated with child custody proceedings and Ms. Holcomb's personal injury action pending in state court. The testimony regarding Child's potential medical and dental expenses was entirely speculative; there is no evidence that Child will in fact require such care or that Mr. Stuteville will incur unexpected expenses relating to Child beyond those accounted for in Mr. Stuteville's budget. Excluding speculative potential expenses, Mr. Stuteville has the financial resources to make his Plan payments and adequately care for himself and Child over the life of the Plan. Should concerns about Mr. Stuteville's care of Child arise, recourse may be had in the State Domestic Relations Court."

In the present case no weight should have been given to the testimony of debtor's daughter in this case where she expressed a desire to possibly go back to

school -or perhaps work- at some point in the future. The foregoing is a speculative

potential expense well into the future which should not have dissuaded the court

from finding that the plan was not feasible. And even should an emergency arise,

debtor has $15,000.00 available to her in the bank.

Another bankruptcy court was even more forceful in its deliberation on the

issue of "feasibility vs. what happens when life happens in the future" conundrum.

The court in *In re Ewing, 583 B.R. 252 (Bankr. Mont. 2018)* had the following to

say:

"A debtor in a chapter 13 case need not prove that the plan is guaranteed to

be successful. Mycek , 2013 WL 9994332, *4, citing In re Anderson , 18 B.R. 763,

765 (Bankr. S.D. Ohio 1982). A bankruptcy court's determination on feasibility

should be based on the facts before the court at the time of confirmation rather than

hypothetical scenarios." From there the court continued and stated:

"If such speculative inquiries were relevant, it is hard to imagine any chapter

13 plan that would be feasible. No debtor can guarantee that their employment will

not be interrupted by injury at some point during the plan term, and feasibility does

not require such an extraordinary showing. Instead, Debtor must demonstrate that

he will be able to make all payments under the plan and to comply with the plan.

After considering the evidence and the Trustee's consent, the Court finds that the

Debtor has satisfied his burden of proof on the issue of feasibility under §

1325(a)(6) by a preponderance of the evidence."

As for the allegation of the trustee that the debtor somehow manipulated

schedule J -her monthly expenses- when she filed her most recent plan so that she

can show that she does in fact have $1,100.00 per month in order to satisfy her

plan requirement, this issue was debated in *In re Olson, 553 B.R. 343 (Bankr. N.D.*

*Ill. 2016)* where the court said:

"Remaining allegations do not show a clear inability to make the proposed

Plan payments. Ventures Trust references prior adjustments in the Debtor's

expenses, presumably to suggest that they have not been accurately represented or

are unlikely. But it does not offer any conclusive basis to conclude that the

Debtor's expenses are or will be higher than those currently stated. Ventures Trust

has not shown a clear inability to make the proposed payments in the Debtor's

budget or otherwise shown that the budget has been materially represented."

"The Debtor's budget shows that he has sufficient disposable income to

make the required payments and nothing in the Objection materially disputes the

Debtor's projected income or shows that his expenses are misstated to a degree

sufficient to suggest an inability to make the payments proposed under the Plan.

On paper, the Debtor income is sufficient to meet his obligations under the Plan

and the Objection has not materially disputed the Debtor's budget so as to question

his ability to make the proposed plan payments. The Plan contains no unusual

terms that would require consideration of circumstances besides the Debtor's

income and expenses."

As for the bankruptcy court's legitimate concern in this case that debtor's

food budget was only $400.00 per month for two people, neither the trustee or any

creditor have come forth to present rebuttal evidence of a clear inability to make

the proposed payments in the debtor's budget or otherwise has shown that the

budget has been materially misrepresented.

Lastly, it should be noted that on September 3, 2020 the court endorsed the

Consent Order Modifying Automatic Stay. The court, by signing such order, would

seem to suggest a tacit agreement, or at least understanding, that it believes that

feasibility was quite possible.

Considering the foregoing case law and considering the fact that the debtor

in this case did not spend the money that should have gone to the mortgage

company (she simply set that money aside and accumulated $15,000.00 was

debtor's testimony), the fact that she testified at the confirmation hearing that she

had made 4 monthly mortgage payments after the mortgage company's motion for

relief from stay, coupled with the fact that debtor had made every single payment

to the trustee for well over a year (16 payments including the higher payment

under her most recent plan before the case was dismissed) should have gone a very

long way towards reassuring the bankruptcy court that that this case was very much "doable."

By failing to apply the "reasonable likelihood of success" in the present case, and by failing to give the debtor the benefit of the doubt based on the evidence presented at confirmation the court committed reversible error.

**B) Debtor will suffer irreparable injury if the stay is denied.**

To demonstrate entitlement to a stay, [the movant] must show that it will suffer irreparable harm absent a stay." Brea Union Plaza I, LLC v. Toys "R" Us, Inc., Case No. 3:18CV419, 2018 WL 3543056, at *5, 2018 U.S. Dist. LEXIS 123049, at *13 (E.D. Va. July 23, 2018). The purported irreparable harm cannot be entirely speculative. See id.; see also Nken v. Holder, 556 U.S. 418, 434-35 (2009) ("[S]imply showing some possibility of irreparable injury fails to satisfy the second factor." (internal quotations omitted)). *In re Retail Grp. (Bankr. E.D. Va. 2021)*

If the stay is denied the debtor's vehicle could be repossessed (that has actually already happened) and even worse, debtor could very well lose her home to foreclosure. The debtor's home was recently scheduled to be foreclosed on and was only cancelled because the debtor filed yet another chapter 13 bankruptcy case. The victory was short lived after her most recent chapter 13 filing was dismissed.

**C) The other parties will not be harmed by the stay.**

There is no reason to believe that the mortgage company would be harmed if it had to wait a few more months to start collecting its mortgage payments. The ruling from the district court will presumably arrive sooner rather than later. In addition, by all accounts the debtor's home has equity and if they were to foreclose six months from now as opposed to six weeks from now no real harm would come to them.

**D) The public interest will be served by granting the stay.**

Debtor does not believe that there is any meaningful public interest in this case.

**There is no time limit to file a motion for stay pending appeal:**

While the Court acknowledges that there is no time limit to file a motion for stay pending appeal embodied in Bankruptcy Rule 8007, the Court further finds that parties have justifiably relied upon the terms of the Plan. The Plan has been substantially consummated. *In re Retail Grp. (Bankr. E.D. Va. 2021)*

**The awkward nature of a stay pending appeal.**

Turning to factor two—whether BB&T will suffer irreparable injury if the stay is denied—the Court finds that BB&T will not be irreparably harmed. Because a trial judge is unlikely to find that he or she will likely be reversed on appeal, courts have found "that primary weight should be given to the balance of hardships. Accordingly, as with a preliminary injunction, if the balance of

hardships tips decidedly in favor of the appellant, the appellant need only show some reasonable likelihood of success on the merits." Hoekstra v. Oak Cluster Community Cluster (In re Hoekstra), 268 B.R. 904, 906 (Bankr. E.D. Va. 2000). The balance of hardships in this case weighs in favor of the Debtors.

*In re Health Diagnostic Lab., Inc. (Bankr. E.D. Va. 2015)*

There is a reasonable likelihood that the debtor will succeed in her appeal. It is also abundantly clear that the hardship that would face the mortgage company in having its foreclosure delayed for a few more months pales in comparison to the hardship that could face the debtor if the stay is not granted; a loss of her car and a loss of her home.

Wherefore, debtor asks that the court enter a stay of its prior dismissal order until such time as the district court makes its ruling.

Respectfully,

/s/Robert S. Brandt
The Law Office of Robert S. Brandt
VSB#46196
600 Cameron Street
Alexandria, VA 22314
703-342-7330
brandt@brandtlawfirm.com
Counsel for Debtor

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of July, 2021 a true copy of the foregoing Motion for Stay was filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all interested parties.


/s/Robert S. Brandt